IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**DAVID OLUSOLA OLADOKUN,**
**A-073-702-543,**

    Petitioner,

vs.                                                             Case No. 4:11cv200-RH/WCS

**ERIC H. HOLDER, JR., et al.,**

    Respondents.

_____/

## REPORT AND RECOMMENDATION

    Petitioner, initiated this *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2241 on May 6, 2011. Doc. 1. Petitioner is a native of Nigeria, and was ordered removed from the United States in 2005. *Id.* Petitioner does not challenge the order of removal, but seeks release from detention under Zadvydas v. Davis, 533 U.S. 678 (2001). Petitioner contends Respondents "refuse to release him even though they are unlikely to remove him and will be unlikely to deport him from the United States in the reasonably foreseeable future." *Id.*, at 2.

    Respondents filed a response and motion to dismiss the petition. Doc. 13. Petitioner has been directed to file a reply, doc. 14, to the motion to dismiss. In this process, the Court has ensured that Petitioner received the motion to dismiss, *see* doc.

17, and counsel for Respondents have taken commendable efforts to ensure Petitioner received the response and motion to dismiss. *See* doc. 18. Petitioner has now filed his reply, doc. 20, and the petition is ready for ruling.

**Response and Motion to Dismiss, doc. 13**

Respondents assert that Petitioner's order of removal became final on February 3, 2005,[1] when the Board of Immigration Appeals affirmed the Immigration Judge's decision to deny Petitioner's applications for asylum and order removal under 8 U.S.C. § 1182(a)(6)(A)(i). Doc. 13, p. 2. In May, 2005, the United States Immigration and Customs Enforcement (hereinafter "ICE") began efforts to locate Petitioner and carry out the removal order. Doc. 13, p. 3; doc. 13-1 (Pasterak declaration).[2] Those efforts were unsuccessful as Petitioner moved to several places, left the state of Texas where his initial immigration proceedings took place, and became a fugitive. Doc. 13-1, ¶ 4.

Petitioner was eventually located after being arrested on October 31, 2010, in Duval County, Florida. *Id.*, at ¶ 5. An ICE detainer was placed against him and he entered ICE custody in November, 2010. *Id.*, at 5-6. ICE requested travel documents from the Nigerian Consulate and on December 16, 2010, Petitioner "was interviewed by the Nigerian Consulate and was approved to receive an emergency travel document for travel to Nigeria." *Id.*, at ¶ 7. Petitioner's travel document was received on January 26, 2011, and he was scheduled to be removed from the United States and returned to Nigeria on February 8, 2011. *Id.*

---

[1] Petitioner had alleged the order became final on April 28, 2006. Doc. 1, p. 3. That dispute is irrelevant for purposes of this case.

[2] The relevant facts are provided in the declaration of Deportation Officer Deborah Pasterak, filed as exhibit 1 to the motion to dismiss. Doc. 13-1.

On February 8th, Petitioner was taken to the Atlanta Airport and placed on the aircraft as scheduled. *Id.*, at ¶ 8. "Once he boarded the plane, the Petitioner started to cause commotion which caused the Marshals to escort the Petitioner off the plane." *Id.* After leaving the plane, Petitioner "became combative, physical, and attempted to flee the ICE officers." *Id.* Force was required to place handcuffs on Petitioner and he was escorted to ICE Detention. *Id.* When Petitioner left detention, he was taken to Grady Hospital for a full examination because Petitioner claimed he was injured by ICE officials. *Id.* Hospital staff "found that Petitioner did not have any injuries and was in good health." *Id.*

Petitioner was returned to the Wakulla County Jail on February 10, 2011, and was served with a Notice of Failure to Comply. *Id.*, at ¶¶ 9-10. Petitioner has remained in detention since that time and has refused multiple times to sign or provide his fingerprints on the Form I-229(a), Instructions to Detainee. *Id.*, at ¶13.

Respondents maintain that Petitioner's detention is legal in that he has "failed to cooperate with his removal and has frustrated ICE's attempts to remove him." Doc. 13, p. 5. Moreover, Respondents contend that "Petitioner cannot plausibly argue that his removal is not likely to occur in the reasonably foreseeable future because the Nigerian government has already approved a travel document for Petitioner on December 16, 2010, and ICE stands ready to remove him." *Id.*, at 6. Respondents assert that "the *only* obstacle to Petitioner's removal has been - and remains - his own refusal to cooperate with ICE's efforts to remove him." *Id.*

**Petitioner's Reply, doc. 20.**

Petitioner claims that "Respondents have based their arguments on fabricated lies and wrong information given to them . . . regarding the incident at Atlanta Fairfield International Airport on February 8th, 2011 . . . ."  Doc. 20, p. 2.  Plaintiff asserts that he "never boarded the Aircraft, neither did any marshall escorted [sic] him off the plane in Atlanta Airport."  *Id.*  Petitioner states that he "did not cause commotion, get physical, combative or attempted to flee the ICE Officers in Atlanta Fairfield International Airport."  *Id.*  Rather, Petition claims he "was attacked by two ICE Officers when he requested to speak to the Pilots that he need to get some of his properties before leaving the United States, which left him with injuries to his person when the two ICE Officers attempted to force him into the Aircraft."  *Id.*

Petitioner also argues that when he was taken to Grady Memorial Hospital in Atlanta, nurses "treated the bruises to his head, face, Knees and his right hand (wrist) but no full examination was done as stated in the declaration."  *Id.*, at 2.  Petitioner has claimed that the declaration wrongfully asserts he did not have any injuries[3] and was in good health.  *Id.*, at 3.  Petitioner says that he "is not in good health" and asserts that he "will not go back to Nigeria until he's fully recover[ed]."  *Id.*, at 11.

Petitioner contends the actions of the ICE Officers "led to Petitioners refusal to board the Aircraft on February 8, 2011 . . . ."  Doc. 20, p. 3.  Petitioner said:

---

[3] Throughout the reply, Petitioner asserts that he has been left "with injuries to his person and he's been treated up until now and taking medication daily since the incident."  Doc. 20, p. 3.  He contends he has "yet to recover from the injuries sustained as a result of the attack."  *Id.*, at 10.  He claims he "is not in good health and don't [sic] know when he will be fully recover, [sic] so his removal is unlikely in the reasonably foreseeable future."  *Id.*; *see also* p. 11.  Petitioner never identifies his injuries, and regardless of such, this allegation does not provide a basis to grant the petition.

Case No. 4:11cv200-RH/WCS

> All the Petitioner asked for on the day he was to be deported (Tuesday February 8th, 2011) is to talk to the Pilot (Delta Airline) that he need to get some of his properties before leaving the United States, but instead of granting or denying his request, the two ICE Officers without saying a word or give command attacked him and try to use excessive force to put him in the aircraft which cause several injuries to Petitioner.

Doc. 20, p. 4.  Again, Petitioner claims "that it was the ICE Officers wrongful acts rather than Petitioner's action that cause the incident and ultimately Petitioners refusal to board the Aircraft in Atlanta Airport on February 8th, 2011."  Id., at 5.

Petitioner admits that he has stopped "signing form I-229 that will authorize ICE to ever contact Nigerian Consulate for travel documents on his behalf . . . ."  Id., at 10.  In an exhibit submitted with his reply, Petitioner also acknowledges that on February 8, 2011, when Petitioner was boarding a plane from Tallahassee to Atlanta, he was asked by ICE officers to sign some documents.  Ex. 2; Doc. 20-1.  Petitioner admits that he "refused."  Id.  Then, while in the Atlanta airport with two other ICE Officers, Petitioner reports: "There I told them that I am not going to board the aircraft because I doubt the authenticity of the travel documents they obtained from Nigerian Consulate (which they did not show to me)."  Id.  Petitioner also complained that he "did not have any of my properties with me."  Id.

**Analysis**

This Court has jurisdiction over this § 2241 habeas petition as Petitioner is not challenging a final order of removal, but only seeking release from what he asserts is an unlawful and indefinite period of detention pursuant to Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).  In Zadvydas, the Supreme Court held that the

continued detention of legal permanent aliens beyond the mandated 90-day[4] removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States." *Id.*, at 689, 121 S. Ct. at 2498. For the sake of uniform administration by the federal courts, the Zadvydas Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' " Clark v. Martinez, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005), *quoting* Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505. The Court concluded that if "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699, 121 S.Ct. at 2503.

In Clark v. Martinez, *supra*, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.[5] The Court concluded that there was no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for an admissible alien. Clark, 543 U.S. at 386, 125 S.Ct. at 727. Thus, it held that the 6-month presumptive detention period prescribed in

---

[4] Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States. 8 U.S.C. § 1231(a)(1)(A).

[5] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6), *quoted in* Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005).

Zadvydas should be applicable.  *Id.*  Accordingly, under Clark and Zadvydas, when an alien shows that he has been held more than six months beyond the removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted. Clark, 543 U.S. at 386-387, 125 S.Ct. at 727; Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005) (relying on Clark to hold that "an inadmissible alien can no longer be detained beyond the statutory 90-day removal period of § 1231(a)(1), where there was no significant likelihood of removal in the reasonable foreseeable future.").

Under 8 U.S.C. § 1231(a)(1)(A), the government has a 90-day period of time to remove an alien.  However, the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).[6]  Thus, the statute expressly permits an alien to be detained longer than the presumptive removal period where the alien acts or conspires to prevent his removal.

In Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d 213 (D. Mass. 2000), a case decided before Zadvydas, the court denied habeas relief where the Petitioner was found to be "the cause for the long delay."  The court concluded that "an alien cannot trigger [a constitutional right to be free from indefinite detention by the INS] with his outright refusal to cooperate with INS officials."  Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d at 221.

---

[6] An alien must be detained during the "removal period."  8 U.S.C. § 1231(a)(2).

In <u>Powell v. Ashcroft</u>, 194 F.Supp.2d 209 (E.D.N.Y. 2002), a case decided in the wake of <u>Zadvydas v. Davis</u>, the court noted that <u>Zadvydas</u> was concerned with the constitutionality of § 1231(a)(6) where aliens were in " ''deportation limbo because their countries of origin had refused to allow [them] entrance.' "  <u>Powell</u>, 194 F.Supp.2d at 211, *citing* <u>Sango-Dema</u>, 122 F.Supp.2d at 221 (explaining <u>Zadvydas</u>).  The court held that <u>Zadvydas</u> was inapplicable because it "did not discuss the constitutionality of Section 1231(a)(1)(C) and the tolling of the removal period during the time of an alien's non-cooperation."  <u>Powell</u>, 194 F.Supp.2d at 212, *citing* <u>Guner v. Reno</u>, 2001 WL 940576 (S.D.N.Y. Aug. 20, 2001).  The court held that petitioner's continued detention was appropriate because he had not "provide[d] accurate and complete information to the INS," and that after he did so, it was likely that he would be removed.  <u>Powell</u>, 194 F.Supp.2d at 212.  *See also* <u>Archibald v. I.N.S.</u>, 2002 WL 1434391, *8 (E.D.Pa. July 1, 2002) (finding the case factually distinguishable from *Zadvydas* where "Archibald's detention [was] a direct result of his seeking relief from deportation" and holding that because his indefinite detention was a result of his requesting a stay, he could not "be heard to complain[] that the time period during which he has been detained constitute[d] a denial of due process."); <u>Thevarajah v. McElroy</u>, 2002 WL 923914 (E.D.N.Y. Apr. 30, 2002)(holding that petitioner's nearly five years in the custody of INS was constitutional following *Zadvydas* because the continued detention was lengthened largely because of petitioner's own actions); *cf.* <u>Seretse-Khama v. Ashcroft</u>, 215 F.Supp.2d 37 (D.D.C. July 22, 2002) (rejecting respondent's argument that petitioner "has not cooperated in obtaining travel documents because he told Liberian officials that he did not want to return to Liberia" and noting that INS had not argued that "petitioner refused to request

travel documents or refused to be interviewed by Liberian officials" and did not deny "his Liberian citizenship, or gave false or misleading information that impeded the issuance of travel documents.").

In this case, Petitioner's six-month period of removal pursuant to Zadvydas has been tolled as permitted by 8 U.S.C. § 1231(a)(1)(C).  Petitioner has not denied his citizenship, as he points out in his reply.  Doc. 20, p. 4.  Petitioner states that he provided truthful information to ICE concerning his place of birth.  *Id.*  Furthermore, Petitioner states that he signed form I-229 prior to February, 2011.  *Id.*

Petitioner's earlier cooperation, however, does not excuse his failure to cooperate on February 8, 2011, and since that time.  Despite Petitioner's argument that he has not been hindering his removal, it is undisputed that Petitioner refused to board the aircraft on February 8th to return to Nigeria.  That plainly hindered and prevented his removal.  It is irrelevant why Petitioner refused to board the aircraft, whether he wanted to speak to the pilots or whether he wanted to determine the authenticity of the travel documents himself.[7]  It is undisputed that travel documents were obtained, the flight was prepared to leave the United States and take Petitioner to Nigeria, and Petitioner refused to leave.  Petitioner prevented his removal on February 8, 2011.

Moreover, even without the tolling period, Petitioner is not entitled to relief under Zadvydas because his removal is reasonably foreseeable.  It is undisputed that travel documents were provided by Nigeria to remove Petitioner, and there is no reason to believe they cannot again be provided.  If Petitioner were cooperating with removal

---

[7] Petitioner admitted that he never was shown the travel documents.  Thus, he has no basis to doubt the legitimacy or authenticity of the documents.  Moreover, airline pilots are not responsible for providing property to Petitioner.

efforts as required, Petitioner could already have been removed from the United States. Petitioner has not made the required showing that it is not significantly likely that his removal could be carried out in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.

In summary, Petitioner absconded for five years after a final order of removal was issued. He was eventually arrested in Jacksonville on a criminal charge. He now impedes his removal by becoming combative when placed on the airplane in Atlanta and trying to flee, and now refuses to allow his fingerprints to be taken. The § 2241 habeas petition should be denied.

Accordingly, it is **RECOMMENDED** that the petition for a writ of habeas corpus filed by **DAVID OLUSOLA OLADOKUN** pursuant to 28 U.S.C. § 2241, doc. 1, be **DENIED.**

**IN CHAMBERS** at Tallahassee, Florida, on September 15, 2011.


> s/    William C. Sherrill, Jr.
> **WILLIAM C. SHERRILL, JR.**
> **UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**